UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RAYMOND JACKSON,

    Plaintiff,

v.

ALEXIS LOZANO et al.,

    Defendants.

2:14-cv-1922-GMN-NJK

**ORDER**

**I.    DISCUSSION**

On March 30, 2015, this Court entered a screening order in this case and permitted Plaintiff's excessive force, deliberate indifference to serious medical needs, and state law claims proceed in part. (ECF No. 7 at 9-10). Plaintiff had alleged excessive force against Defendants Correctional Officers Thompson, Lozano, and Carrillo at High Desert State Prison ("HDSP") for shooting Plaintiff in the hand once he had been lying on the ground. (*Id.* at 3, 6). The Court stayed the case for 90 days to give the parties an opportunity to settle their dispute. (*Id.* at 10). A mediation conference has not yet been set.

On April 20, 2015, Plaintiff filed an emergency motion for temporary restraining order ("TRO") to prevent death and/or bodily harm. (ECF No. 12 at 1). Plaintiff seeks a restraining order to prevent his transfer to Ely State Prison ("ESP") where he will be beaten or killed in retaliation for filing this lawsuit. (*Id.*). The Court ordered Defendants to file a response because it found that Plaintiff had established a colorable likelihood of success on the merits for retaliation. (ECF No. 14 at 3-4).

In the motion for TRO, Plaintiff alleged the following: Since coming to HDSP, Plaintiff

has had two state-sponsored attempts on his life. (ECF No. 12 at 2). The first attempt involved the shooting of his hand on February 18, 2014, and the second one involved prison officials placing him in a cell with a dangerous inmate after the shooting. (*Id.*; ECF No. 7 at 3). There is a culture at HDSP to encourage the abuse and shooting of inmates. (ECF No. 12 at 2). Prison officials have targeted Plaintiff to be murdered or crippled to a point where he can no longer proceed with this litigation. (*Id.*).

In the motion, Plaintiff alleges the following facts: On April 11, 2015, Officer Romero went to Plaintiff's cell door and said, "I hear you are going to Ely Prison and you'll be stomped out, maybe even killed because all the shit [you're] causing behind your lawsuit." (*Id.* at 2-3). Plaintiff responded, "They can't do that." (*Id.* at 3). Romero said, "We work as a unit, so the warden will send you up there and let them handle your ass, good luck." (*Id.*). Inmate David Fennel heard the conversation and is willing to testify.[1] (*Id.* at 3, 9). On April 13, 2015, Sgt. Bart went to Plaintiff's door and said, "You really did it this time [Plaintiff], the warden is done with you and you will be on an emergency overnight to Ely State Prison if not this week, next week for sure." (*Id.* at 3). Plaintiff responded that he "wasn't trying to go for fear of what could happen" to him. (*Id.*). Bart told Plaintiff, "ah, [you're] going whether you like it or not. It'll be fun." (*Id.*). This is the third attempt on Plaintiff's life. (*Id.*). On April 8, 2015, correctional officers sat and watched Plaintiff fight for his life in his cell against another inmate. (*Id.*). Plaintiff had informed prison officials that he felt threatened by that inmate but they did nothing to prevent the attack against Plaintiff. (*Id.* at 7). The correctional officer who shot Plaintiff was promoted. (*Id.*). Plaintiff is in fear for his life and does not want to die. (*Id.* at 3). Plaintiff makes arguments for each factor. (*Id.* at 5-6).

In response, Defendants address Plaintiff's factual allegations. (ECF No. 16 at 2). First, Defendants assert that the February 18, 2014 shooting was not a deliberate attempt on Plaintiff's life but rather a reaction to a security situation created by Plaintiff when he refused

---

[1] According to inmate David Fennel's affidavit, he heard Romero tell Plaintiff, "You better pray, or do what you can, because word is [they're] going to stomp you out and possibly kill you up at Ely Prison for all the shit [you're] causing with your lawsuit." (ECF No. 12 at 9).

1 to return to his cell and would not stop advancing toward the officers after Lozano repeatedly
2 told Plaintiff, "stop or I'll shoot." (ECF No. 16 at 2-3). In support of their version of the facts,
3 Defendants have attached Lozano's report on the use of force from February 18, 2014, and
4 correctional officer witness statements from that day. (ECF No. 16-1, 16-2).

5 Second, Defendants assert that Plaintiff was not housed with a dangerous inmate after
6 the shooting. (ECF No. 16 at 3). Because Plaintiff did not identify who the dangerous inmate
7 was, Defendants searched through Plaintiff's housing history to determine who Plaintiff might
8 be referring to. (*Id.* at 3-4). Defendants housing history demonstrates that Plaintiff was
9 housed in the infirmary, Unit 13, from February 18, 2014 to May 13, 2014, when he was
10 transported to disciplinary segregation. (ECF No. 16-3). On May 13, 2014, Plaintiff was
11 housed in a single cell unit in lock down. (ECF No. 16 at 4). On April 6, 2014, while at the
12 infirmary, Plaintiff was temporarily housed with an inmate named Collier. (*Id.* at 4; ECF No.
13 16-4 at 2). The prison case notes state that Plaintiff moved into Collier's room for "bed space
14 issues." (ECF No. 16-4 at 2). However, Collier left the infirmary on April 17, 2014. (ECF No.
15 16-5 at 2). Defendants do not consider Collier dangerous because he has one dismissed
16 fighting charge on his disciplinary record. (ECF No. 16-6 at 2). Additionally, in July 2014,
17 prison officials approved Collier for the Structured Senior Living Program at NNCC. (ECF No.
18 16-8 at 2). According to Defendants, this means that Collier is a senior citizen in need of
19 medical supervision. (ECF No. 16 at 4-5). During the time Plaintiff and Collier housed
20 together, Plaintiff was 27 years old. (ECF No. 16-4).

21 Third, Defendants assert that Plaintiff's transfer to ESP was not to prevent Plaintiff from
22 litigating his case but rather because of Plaintiff's violent prison history. (ECF No. 16 at 5).
23 Instead, Defendants assert that since Plaintiff's incarceration on January 10, 2014, he has
24 received seven notices of charges, four of which were for fighting. (ECF No. 16-7). On
25 September 3, 2014, prison officials recommended that Plaintiff be transferred to ESP. (ECF
26 No. 16-4 at 4). However, the transfer did not occur until Plaintiff's most recent fight on April
27 8, 2015. (*Id.* at 6-7).

28 Fourth, Defendants provide a declaration from Romero denying Plaintiff's version of the

3

events and describing his own version of the events. (ECF No. 16-10).

Fifth, Defendants assert that correctional officers did not sit around on April 8, 2015 and watch Plaintiff fight for his life. (ECF No. 16 at 7). Officer Binder filed a notice of charges against Plaintiff on that day for fighting. (ECF No. 16-9 at 2). According to the notice of charges, Binder was called to investigate a possible fight in Plaintiff's cell. (*Id.*). Binder observed Plaintiff attempting to stab his cell mate with a weapon. (*Id.*). Binder gave verbal commands for the inmates to stop fighting but the inmates kept fighting. (*Id.*). Lt. Potter and Senior Officer Vogelsang came to the cell and also gave verbal commands to stop fighting, which the inmates ignored. (*Id.*). Potter pulled out a can of pepper spray, told the inmates to stop fighting, and then sprayed the can when the inmates did not comply. (*Id.*). Plaintiff had stabbed his cell mate twice in the back of the head. (*Id.*). Defendants argue that Plaintiff cannot establish a likelihood of success on the merits for retaliation and cannot establish the rest of the factors. (*Id.* at 10-13).

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Furthermore, under the Prison Litigation Reform Act ("PLRA"), preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate

the Constitution quite apart from any underlying misconduct they are designed to shield." *Id*.

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567-68.

In light of the evidence provided by Defendants, the Court finds that Plaintiff is unable to establish a likelihood of success on the merits for retaliation. Based on the evidence before the Court, it does not appear that Defendants have attempted to kill or cripple Plaintiff in retaliation for filing this lawsuit. First, the evidence demonstrates that the original shooting may have been caused by Plaintiff's refusal to obey orders. Second, the evidence questions Plaintiff's allegations that Collier was a dangerous inmate. Third, the evidence questions whether correctional officers truly sat around and watched Plaintiff fight for his life in a cell when it appears that Plaintiff may have been the attacker. Fourth, the evidence appears to demonstrate that prison officials transferred Plaintiff to ESP for institutional security needs because of Plaintiff's violent prison history and not as a method to kill or cripple him. As such, the Court does not find that Plaintiff can establish a likelihood of success on the merits for retaliation. The Court denies the motion for temporary restraining order. (ECF No. 12). The 90-day stay remains in effect. During this period, no other pleadings or papers shall be filed in this case, and the parties shall not engage in any discovery.

## II.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that motion for temporary restraining order (ECF No. 12) is denied.

DATED this 14th day of May, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Court